Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 161396, United States v. Annabel Pagan-Romero. Counsel is reminded to please speak directly into the microphone today. Thank you. Thank you. Your Honor, if I could reserve three minutes for rebuttal. You may. That will be deducted from your initial time. Thank you. Your Honor, the question today was whether the district court committed error and prejudiced my client when during jury deliberation. After a day and a half deliberation, the jurors asked the court, district court judge, who was a substitute judge, residing judge, was out of office during that day, asked them for a dictionary. And the attorney for my client objected. The court gave them the dictionary without any question as to why they wanted the dictionary, without any instruction, without any initial effort to figure out what the issue was. The court then held a hearing, a motion hearing, and eventually ended up calling all the jurors to testify as to what happened. They all admitted. How much time had elapsed between the completion of the trial and this hearing? About three months. There was initially, almost immediately after the trial, there was a motion for a new trial followed by my client, by the attorney for the defendant. The government followed the response, and by the time the hearing was scheduled, it was about three months later. My notes say that they asked for the dictionary on October 5th, and the questioning began on February 23rd. And there were three rounds of questioning, one with the foreperson, one with four jurors, and one with all jurors, that occurred on February 23rd, March 14th, and March 21st, 2016. Do I have that right? Yes, correct. And so first they asked the presiding, the presiding, the foreman of the panel what happened. He was pretty vague. He didn't really remember very much at all. There was further discussion between the counsel and the judge. They then called, the judge then agreed to call in, I believe it was, I think it was the female jurors first. I don't know why he distinguished it that way, but he did. And he questioned them, and then the next day, again it was further discussion, the next day he then called in the male jurors. So basically all the jurors were voir dire. At least two of them, well, what was clear was that one thing was that they were interested in knowing the definition or helped with the term knowingly, which was the key issue at trial. I'm going to interrupt you for just a second to get a background point in, but don't stray off too far. Your brother says at least twice in his brief that you concede that the evidence against your client was, quote, overwhelming, close quote. Do you concede that the evidence against your client was overwhelming? He says you did. No, I don't concede that it was overwhelming. I concede that there was overwhelming evidence of fraud. My client did not dispute that there was fraud. The question was who committed the fraud and whether my client had any knowledge of the fraud. That was the issue at trial, which is different from overwhelming evidence of guilt, because that basically begs the whole question. You describe the efforts that the district court judge made to get a sense of the impact that this dictionary definition had on the jury. Was there anything at all deficient about the procedures pursued by the district court judge to address your concern about the impact of the dictionary on the jurors' deliberations? I think if there were questions that should have been asked that weren't asked, I think those are probably waived because the defense counsel did not ask about further. In other words, what happens is they ask the jurors, what was it used for? They say knowingly. Why did you want to know that? We were confused. At least two of them say that. We wanted assistance with that. And yes, it was helpful. And then the judge asked kind of a leading question, saying, did this affect your deliberation at all? They're all being called in three months later. They're obviously concerned about this. And they all say, no, it didn't. But that's contradicted by the fact of it was confusing. It helped us. We read it out loud. We passed the dictionary definition around. And an hour later, after a day and a half of deliberation, they come back with a guilty plea. So what exactly is it that would entitle your client to a new trial? At times I get the sense that you're making almost a structural error type of argument, that once this dictionary went into the jury room, there was no way to really understand what impact it had. It should not have been done. That's your position. And there may be good reasons to take that position. My sense is that it's your position that because we can't really know what happened here, this should be deemed error, and your client should go to a new trial. Is that your position? Well, we believe that this court should adopt a remnant presumption, that there is a presumption of error and that the government then has to show harmless error. But my position is not so much that, yes, it's structural, yes, there's a presumption, but also that this was prejudicial. This was prejudicial because we don't know if there was a unanimous verdict. We don't know if they adopted a different standard for knowingly from that of the instruction in that. The dictionary definition also used leading words, shrewd and clever. And the court, the district court said, well, that makes things more strict because the person has to not only be knowingly, but they have to be shrewd and clever as well. It's not how the dictionary definition reads. You could read it conjunctively or you could read it disjunctively. You could say if somebody is shrewd and clever and involved in some act, they are knowingly. How could you be shrewd or clever without knowing what you're doing? How could you be shrewd and clever without knowing? You could be shrewd and clever and still be involved. I do all sorts of things where I think I'm shrewd and clever, but I get taken. I don't know exactly what I'm signing or what I'm involved in because I'm just busy. Now, remember, this guy, the defendant was a doctor, was a prominent doctor in the community, which is a highly prestigious position. Doesn't the Boylan decision and the Alfre Campos decision basically say that the presumption, the approach with the presumption requires an egregious level of tampering, some type of external tampering? What about this instance you described as egregious? Sorry, your red light is on, but you can answer that question. I think what's egregious, and I'm not sure the egregious is actually required in the Rogers because Rogers leaves that question open, but the egregiousness of this situation is here, a jury deliberates for a day and a half. They ask for extrinsic material. The district court makes no effort at all to figure out why do they want this dictionary. They could, if the district court judge had done that, the district court judge would have learned that the issue was determined only and could have issued a corrective or additional instruction based upon law as opposed to just handing them a dictionary so that they could go on their own and have no exploration of what is a key term which is critical, which is the critical issue in this case. It's not whether something bad happened. Something bad did happen. The question is whether my client knew that something bad happened. Counsel, do please remain at the podium. Judge Lynch, do you have any questions for counsel, please? Yes, I do. Under the Dairdump case, we adhered to a Bradshaw approach to the Rimmer presumption and said, as I believe Judge Bahanzard said, it's reserved for particularly egregious situations. Do you have a response to that? I don't think that the Rimmer, the application or non-application of the Rimmer presumption, we say it should apply, but I don't think that determines the case because I do think in this case, regardless of whether you put the burden on us to show prejudice or the government to show that it's not harmless error, that it is harmless error. We meet that test because of the importance of the definition of the term knowingly, the error in allowing the dictionary to be presented to the jury without any cautionary explanation, without any cautionary instruction, without any further instruction as to the term knowingly, and the fact that it could be read disjunctively, the definition could be read disjunctively, it is not synonymous with the jury instruction on knowingly, and this was the critical term. So given all these factors together, we think we established error and prejudice. Can I ask one more question? On the dictionary definition that refers to shrewdness or cleverness, and the district court's assessment that that increased the government's burden, I thought that trial counsel agreed with that, and therefore the argument is waived. Didn't trial counsel agree? I think trial counsel doesn't object to it, but it's in passing. I mean, trial counsel is pretty strong in the objection, and by that time... Trial counsel did not object to that portion, am I correct? At that point, trial counsel did not object, but I don't think that makes it a waiver, because at that point, the judge had already decided that it was harmless error, and that he was not going to order a new trial. He then said, by the way, he said in addition, this is a stricter standard. It was kind of a dicta kind of statement, which I'm not sure required a direct objection. Thank you. Thank you, counsel. Good morning, Your Honors, and may it please the court. Francisco V. Martinez, on behalf of the United States. Appellant Pagan is not entitled to a new trial. Although the jury was provided with a dictionary during deliberations,   and made a supportable determination that Pagan had not been prejudiced and that any error was harmless in any event. And, Your Honors, there are three reasons. Counsel, before you give those reasons, I gather you agree that giving the dictionary to the jury was an error. Your Honor, under the circumstances of this case, to the extent the dictionary was used to look up a term that was included in the jury instructions and went towards defining what the lie is, there was an error. However, that there was error does not mean that there was prejudicial error. There was also not just a substantive error, but a procedural error. The note was never read out in open court. There was no note. There was an oral communication. There's nothing that we have on the record regarding what the trial judge thought when this request came in. There's no limiting instruction. So it was not just a substantive error, but it was an error in handling the communication from the jury, wasn't it? Correct, Your Honor. This was through an oral communication rather than a jury note. However, as I was saying, that even if there was error, this does not mean that there was a prejudicial error. And there are three reasons for that, Your Honor. First and foremost is the strength of the government's case in this case. As Pagan stated in the district court, not only was it overwhelming as to the fact that there was a fraudulent scheme, but the government presented witnesses that pointed to Pagan himself as the one who orchestrated the entire thing. The government's case also included over 270 exhibits, including travel records, showing Pagan had been outside of Puerto Rico on dates that claim forms that he signed stated that he was in Puerto Rico examining and certifying claimant injuries. Finally, the government's case also included two audio recordings in which Pagan himself is heard speaking to undercover agents about detailing how the entire certification process was done. And during that meeting, he also signed claim forms lying about the dates of the examination certifications. This evidence, Your Honor, was so overwhelming that when weighed against Pagan's own testimony of trial in which he proclaimed his innocence, the jury simply did not believe him. A second reason for supporting the district court's finding that this was not prejudicial and that this was harmless error is that we know that the jury based its decision on the evidence presented at the trial because that is what they said. The judge conducted a thorough post-verdict inquiry during which the jurors stated that they adhered to the judge's jury instructions and based their verdict solely on the evidence presented at trial. There's at least a thread of ambiguity in that, isn't there? At least one of the jurors said that, quote, it helped us out during the second March 14, 2016 examination. There's some flavor that it has at least some impact, isn't there? Your Honor, two things as to that. First, that the jurors said that the dictionary definition helped us out, and most would mean that its supplements have been a substitute to the jury instructions given the fact that they said that they followed the judge's jury instructions.  As conceded by Pagan in the district court, that definition in the dictionary was, quote, more generous were his words to him, meaning that the burden of proof for the government was elevated. So it was, in any case, to the detriment of the government if this definition was used. And this goes back to the government's overwhelming evidence in this case that despite having that elevated burden of proof, they were still able to meet it and get its convictions. If Your Honors have any questions? Judge Lynch, do you have any questions for counsel? Thank you, Judge, without further note. All right, thank you. Thank you, counsel. Do we reserve three minutes for rebuttal? The question, I think, that really is raised is we don't doubt that the jury looked at the evidence. The dictionary wasn't evidence. The dictionary was a definition, a legal definition. The question is whether they apply the proper legal question. The analysis of the evidence with regard to knowing. And the question with regard to the evidence or the fact that the evidence was overwhelming, it was overwhelming with regard to the commission of the fraud. There were witnesses who testified that Pagan knew. There were witnesses who testified that the defendant didn't know. Counsel, I thought we just heard government counsel say that there was overwhelming evidence of your client's knowledge referring to audio recordings, referring to documents, bearing his name, claimed documents when he was apparently not in Puerto Rico. So they're not making some general assertion of overwhelming evidence. They say there was overwhelming evidence of his knowledge. Two things. One is with the time that he was out of the country, those documents signed, I believe, relate to a different insurance policy which wasn't charged in the indictment. That's one. The second with regard to the audio recordings, it was discussed during cross and during closing argument that during the audio recordings that the patient or the undercover patient actually did have some burns and he actually did get some treatment for burns. So that there really was a signing as to that. But regardless of that, the question is what was the jury thinking? Why did the jury believe that there was overwhelming evidence that my client acted knowingly? And as best you can tell from looking at the record, the answer is no. Because they deliberated for a day and a half. They wanted to know, at least some jurors wanted to know, without unanimity, wanted to know what does knowingly mean as regards to my client's knowledge? So they weren't convinced that the overwhelming evidence was that my client knew about the fraud or met the definition knowingly as provided by the court. They wanted more explication of that and they asked for a dictionary for that. And then they got the dictionary and how quickly did the verdict come in? Around an hour. So that pretty much determined it. We don't know exactly how that played in, but there sure is a reasonable reason to believe that the jury was not convinced that there was overwhelming evidence that my client acted knowingly and that the dictionary definition helped them to get there. Just one question. The standard here you've been assuming is a presumption and that we use the Chapman standard. Isn't it true that in some cases where the court has conducted such a thorough investigation that it's really an abuse of discretion standard that we're supposed to apply here? I think it's somewhat confusing as to which standard really should apply. But we believe that we meet whatever standard, abuse of discretion or presumption, because we believe that the dictionary definition had this impact and that the jury deliberation indicates that. Thank you. Judge Lynch, any further questions for counsel? No, thank you. Thank you, counsel. Thank you both.